UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:21-CR-119

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL INFORMATION |
| | ) | (Filed Under Seal) |
| JASPER DEONTA GOODMAN | ) | |

The United States Attorney charges that:

## INTRODUCTION

1. MG was an individual who resided and did business in the Eastern District of North Carolina. MG engaged in various business activities, including credit repair, from his home in Knightdale, and a business location in Raleigh.

2. JASPER DEONTA GOODMAN was an individual who resided and did business in the Eastern District of North Carolina. GOODMAN was a client and business affiliate of MG.

3. As detailed herein, GOODMAN and MG conspired to defraud various banks and through the use of fraudulent identities and credit profiles, and through the use of false and fabricated documents. Additionally, GOODMAN and others filed false and fraudulent claims to collect COVID-19 relief monies as detailed herein.

## COUNT ONE

## THE CONSPIRACY

4. Beginning no later than September of 2017 and continuing to a time

unknown, but no later than August of 2019, within the Eastern District of North Carolina and elsewhere, the defendant JASPER DEONTA GOODMAN, did knowingly combine, conspire, confederate, and agree with MG to execute and attempt to execute schemes and artifices to defraud the financial institutions identified herein, and to obtain any of the moneys, funds, credits, assets, and other property owned by and under the custody and control of said financial institutions by means of materially false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

### PURPOSE OF THE CONSPIRACY

5. It was the purpose of the conspiracy for GOODMAN, MG, and others, to benefit financially from the creation and use of false identities, credit profiles, and documents, on various loan and credit applications with financial institutions, as defined in Title 18, United States Code, Section 20.

### MANNER AND MEANS OF THE CONSPIRACY

6. Introductory paragraphs 1 through 3 are incorporated herein as though fully set forth in this Count.

A. Capital One Bank

7. Between September 21, 2017 and August 31, 2018, GOODMAN and MG conspired to defraud Capital One Bank.

8. In exchange for payment, MG assisted GOODMAN to create a fraudulent credit profile for use in credit transactions. GOODMAN supplied MG with an alternate address and phone number that would not be easily associated with

2

him. Then MG supplied to GOODMAN an alternate identity for GOODMAN using Goodman's name, but a false address, phone number, date of birth, and a social security number ending in *1367 that did not belong to GOODMAN.

9. GOODMAN then utilized the fraudulent credit profile to apply for and obtain a credit account at Capital One Bank ending in *4529.

10. As agreed, GOODMAN utilized the Capital One credit account to make purchases of various personal items, and paid MG a portion of the fraud proceeds.

11. Neither GOODMAN nor MG paid all of the accrued charges on the credit account. Since the credit account was opened using fraudulent information, however, neither GOODMAN nor MG were held accountable for the losses, which were ultimately left for Capital One to charge off as a loss of $781.00.

B. Synchrony Bank

12. Between February 20, 2018 and November 30, 2018, GOODMAN and MG conspired to defraud Synchrony Bank, a supplier of Lowes Home Improvement credit cards and accounts.

13. In exchange for payment, MG assisted GOODMAN to create another fraudulent credit profile. GOODMAN supplied MG with another alternate address. MG supplied to GOODMAN an alternate identity for GOODMAN using the alias "Michael Jones", including a false address, phone number, date of birth, and a social security number ending in *2947 that did not belong to GOODMAN.

14. GOODMAN then utilized the fraudulent credit profile to apply for and obtain a credit account ending in *9026 from Synchrony Bank at a local Lowes store.

3

15. As agreed, GOODMAN utilized the credit account to make purchases of stored value cards, and paid MG a portion of the fraud proceeds.

16. Neither GOODMAN nor MG paid all of the accrued charges on the credit account. Since the credit account was opened using fraudulent information, however, neither GOODMAN nor MG were held accountable for the losses, which were ultimately left for Synchrony Bank to charge off as a loss of $19,950.05.

### C. Ally Financial

17. In the midst of the Capital One Bank and Synchrony Bank frauds, GOODMAN also utilized the fraudulent identity with a Social Security Number ending in *1367 to apply for and obtain a loan with Ally Financial in the amount of $21,949.97 for purchase of 2016 Ford Transit Van.

18. Neither GOODMAN nor MG paid all of the promised payments on the Ally loan. Since the credit account was opened using fraudulent information, however, neither GOODMAN nor MG were held accountable for the losses, which were ultimately left for Ally Financial to charge off as a loss of $17,426.23

### D. Velocity Mortgage Capital

19. In or about October of 2018, GOODMAN desired to purchase property located at 2008 Poole Road, Raleigh, NC, to carry on a sweepstakes business. GOODMAN and MG conspired to fabricate a nominee company owner and fraudulent bank account documents to secure a mortgage for the purchase of 2008 Poole Road.

20. Specifically, on or about October 1, 2018, GOODMAN and MG caused to be filed with the North Carolina Secretary of State an annual report claiming that a

4

man with initials S.M. was the President of a company named Landstar Investment Group of NC, Inc ("Landstar"). In fact, GOODMAN controlled Landstar, and MG assisted GOODMAN to utilize McLeod as a nominee.

21. On or about October 4, 2018, MG fabricated and caused to be fabricated Bank of America bank statements for an account in the name of Landstar. MG caused these bank statements to be emailed to GOODMAN from an email address at MG's business, ending in "@needarecorddeal.com."

22. On or about October 30, 2018, MG and GOODMAN caused an application to filed with Velocity Mortgage Capital ("Velocity"), a mortgage lending business, in the name of Landstar. The mortgage was purportedly filed by S.M., using a Social Security Number ending in *2140. In fact, S.M. had no affiliation with Landstar, did not file the application, and did not possess a Social Security Number ending in *2140. Additionally, in support of the loan application, MG and GOODMAN caused to be submitted to Velocity the fraudulent Landstar bank statements as a purported verification of available funds. In fact, no such funds existed.

23. Based upon the foregoing false and fraudulent documents, Velocity issued a mortgage loan to Landstar in the amount of $199,500.00, resulting in GOODMAN's acquisition of 2008 Poole Road. This mortgage loan was repaid in full.

E. EMC Financial

24. In addition to the foregoing frauds upon financial institutions, GOODMAN and MG also attempted to carry out a fraud upon a business lender

5

known as EMC Financial ("EMC")

25. On or about July of 2019, GOODMAN corresponded with MG concerning the fabrication of additional bank statements. MG caused these bank statements to be fabricated in support of the loan.

26. On or about July 8, 2019, MG and GOODMAN caused a $250,000 loan application to filed with EMC in the name of Landstar. The application was purportedly filed by S.M., using a Social Security Number ending in *2140. In fact, S.M. had no affiliation with Landstar, did not file the application, and did not possess a Social Security Number ending in *2140. Additionally, in support of the loan application, MG and GOODMAN caused to be submitted to EMC the fraudulent Landstar bank statements as a purported verification of gross annual revenue of $3 Million. In fact, Landstar had no such revenue.

All in violation of Title 18, United States Code, Section 1349.

## COUNT TWO

### Background

27. The United States Small Business Administration (SBA) is an agency within the Executive Branch of the government of the United States that provides support to entrepreneurs and small businesses. The mission of the SBA is to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

28. As part of this effort, the SBA enables and provides for loans through banks, credit unions and other lenders. These loans have government-backed guarantees. In addition to traditional SBA funding programs, The CARES Act, which was signed into law in March 2020, established several new temporary programs and provided for the expansion of others to address the COVID-19 outbreak.

29. One response to the COVID-19 outbreak was an expansion of an existing disaster-related program - the Economic Injury Disaster Loan (EIDL) - to provide for loan assistance (including $10,000 advances) for small businesses and other eligible entities for loans up to $2 million. The EIDL proceeds can be used to pay fixed debts, payroll, accounts payable and other bills that could have been paid had the disaster not occurred; however, such loan proceeds are not intended to replace lost sales or profits or for expansion of a business.

30. Unlike certain other types of SBA-guaranteed loans, EIDL funds are issued directly from the United States Treasury and applicants apply through the SBA via an online portal and application. The EIDL application process, which also uses certain outside contractors for system support, collects information concerning the business and the business owner, including: information as to the gross revenues for the business prior to January 31, 2020; the cost of goods sold; and information as to any criminal history of the business owner. Applicants electronically certify that the information provided is accurate and are warned that any false statement or

misrepresentation to the SBA or any misapplication of loan proceeds may result in sanctions, including criminal penalties.

## THE SCHEME TO MAKE FALSE EIDL CLAIMS

31. Between March of 2020 and September of 2020, in the Eastern District of North Carolina and elsewhere, JASPER DEONTA GOODMAN, aiding and abetting others, engaged in a scheme to fraudulently obtain disaster-related benefits in the form of SBA-sponsored Economic Injury Disaster (EIDL) loans.

32. GOODMAN submitted and caused to be submitted applications for loans under the EIDL program that contained false statements, misrepresentations and omissions related to, among other things, income, employment, and claimed business entities.

33. GOODMAN falsely attested and caused to be attested that the information in the loan applications was true and accurate, resulting in the disbursement of various EIDL loan proceeds.

34. GOODMAN, with the assistance of MG, fraudulently opened and maintained bank accounts at First Citizens Bank using a false identity in the name of a man with initials W.W. MG cause to be created and delivered to GOODMAN a fraudulent North Carolina Driver License bearing GOODMAN's photograph, but in the name of W.W.. GOODMAN used this false identity to open First Citizens Bank accounts, as well as a credit account, in the name of W.W.. GOODMAN utilized these nominee accounts to receive the fraudulently obtained EIDL loan proceeds.

35. GOODMAN misapplied the EIDL proceeds for purposes unrelated to those authorized by the United States Small Business Administration.

## SPECIFIC CLAIMS

36. On or about March 31, 2020 GOODMAN submitted an EIDL application to the SBA for Landstar Investment Group of NC, Inc. (application number ending in 0464) that contained false statements and misrepresentations and omissions related to ownership of the business, revenue of the company, and background information. With respect to ownership, the claim represented that W.W. was the owner of the business. In fact, W.W. was a fraudulent identity supplied to GOODMAN by MG. The application resulted in Landstar Investment Group of NC, Inc. receiving a $2,000.00 grant and $4,700.00 EIDL loan.

37. On or about June 24, 2020, GOODMAN submitted an EIDL application to the SBA for Action Transportation & Limousine Service LLC (application number ending 3852) that contained false statements and misrepresentations and omissions related to revenue, the applicant's Social Security Number, and background information. The application resulted in Action Transportation & Limousine Service, LLC receiving a $11,000.00 EIDL loan.

38. Following the foregoing EIDL applications, GOODMAN used another individual, identified herein as "Person 1," to file various other fraudulent EIDL claims on behalf of businesses owned or controlled by GOODMAN. In exchange for these services, GOODMAN agreed to pay Person 1 ten percent any fraudulent EIDL loan proceeds disbursed using the United States Mail and a cash transfer application

EIDL claims to be filed with the SBA, knowing the same to contain materially false and fraudulent representations regarding business ownership, revenue, and background:

| DATE | BUSINESS | APPLICATION NUMBER |
|---|---|---|
| June 16, 2020 | Landstar Investment Group of NC, Inc | *6990 |
| June 30, 2020 | Action Transportation and Limousine Service LLC | *5308 |
| July 11, 2020 | Donald Teasley | *9887 |
| July 15, 2020 | Landstar Investment Group LLC | *1660 |
| July 16, 2020 | Motor City Auto Brokers | *9602 |
| August 11, 2020 | Landstar Investment Group LLC | *4845 |
| August 24, 2020 | Good Farms Hemp Farming & Processing Inc. | *7778 |
| August 24, 2020 | JG Global LLC | *9090 |

The July 16, 2020 application for Motor City Auto Brokers resulted in a $70,000.00 EIDL loan.

39. Therefore, between March of 2020 and September of 2020, in the Eastern District of North Carolina and elsewhere the defendant, JASPER DEONTA GOODMAN, aiding and abetting others, made and presented claims upon and against the United States Small Business Administration, that is, the aforementioned claims for disaster-related benefits in the form of EIDL applications, knowing that the claims were false, fictitious, and fraudulent, as described herein, all in violation of Title 18, United States Code, Sections 287 and 2.

## FORFEITURE NOTICE

The defendant is given notice that all of the defendant's interest in all property specified herein is subject to forfeiture.

Upon conviction of the offense set forth in Count One of the Criminal Information, the defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2)(A), and/or Title 18, United States Code, Section 981(a)(1)(C) (the latter as made applicable by Title 18, United States Code, Section 2461(c)), any and all property, real or personal, constituting, or derived from, any proceeds the defendant obtained directly or indirectly as a result of the said offenses.

The forfeitable property includes, but is not limited to, the gross proceeds personally obtained by the defendant in the amount of at least $42,993.58.

If any of the above-described forfeitable property, as a result of any act or omission of the defendant --

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third party;

(3) has been placed beyond the jurisdiction of the court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the

11

value of the forfeitable property described above.

ROBERT J. HIGDON, JR.
United States Attorney

BY: WILLIAM M. GILMORE
Assistant United States Attorney

12